UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CENTER FOR BIOLOGICAL
DIVERSITY, SIERRA CLUB, SOUTH
FLORIDA WILDLANDS ASSOCIATION,
WILDLANDS CPR and BRIAN SCHERF,

    Plaintiffs,

v.                                         Case No:   2:13-cv-364-FtM-38DNF

SALLY JEWELL, Secretary U.S.
Department of the Interior, and
JONATHAN B. JARVIS, Director National
Park Service,

    Defendants.

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause is before the Court on the Defendants, Sally Jewell, Secretary U.S. Department of the Interior and Jonathan B. Jarvis, Director National Park Service's Partial Motion to Dismiss or Alternatively Motion to Stay Plaintiffs' Claims (Doc. 28) filed on September 20, 2013.  The Plaintiffs, Center for Biological Diversity, Sierra Club, South Florida Wildlands Association, Wildlands CPR, and Brian Scherf filed an Opposition to Defendants' Partial Motion to Dismiss or Alternatively Motion to Stay (Doc. 31) on October 11, 2013.  The Defendants filed a Reply Memorandum in Support of Partial Motion to Dismiss or Alternatively Motion to Stay Plaintiffs' Claims (Doc. 37) on November 5, 2013, and the Plaintiffs filed a Surreply in Support of Their Opposition to Defendants' Partial Motion to Dismiss or Alternatively Motion to Stay (Doc. 40) filed on November 26, 2013.  The Defendants assert that Plaintiffs' claims in Counts One, Three Four and Five should be dismissed as prudentially moot, and the Claim in Count Two should be

stayed, or alternatively all of the claims should be stayed pending the completion of an Environmental Impact Statement and consultation with U.S. Fish and Wildlife Service. The Plaintiffs argue that the claims raised are not prudentially moot, and further that the claims raised should not be stayed because continuing damage will occur to the Big Cypress National Preserve and to the wildlife there if this case is stayed until the Environmental Impact Statement and consultation with U.S. Fish and Wildlife Service is completed.

I. **Allegations in the Supplemental Complaint for Declaratory and Injunctive Relief (Doc. 22)[1]**

This action challenges two decisions by the National Park Service ("**NPS**"), an August 5, 2010 Closure Order, and a July 22, 2011 Closure Order. (Doc. 22, ¶1). These Closure Orders authorized secondary trail networks for off-road vehicles ("**ORV**") in the Turner River Unit and the Corn Dance Unit of Big Cypress National Preserve ("**Preserve**"). (Doc. 22, ¶1). A Closure Order of May 28, 2013, modified these prior Closure Orders. (Doc. 22, ¶1). The August 5, 2010 and July 22, 2011 Closure Orders authorized an 83-mile secondary trail system in the Turner River Unit, and a 64-mile secondary trail system in the Corn Dance Unit. (Doc. 22, ¶2). After receiving a letter from Plaintiffs, and after the instant suit was filed, on May 28, 2013, NPS issued a Closure Order indefinitely closing 34.71 miles of secondary ORV trails in the Turner River Unit, and 27.54 miles of secondary ORV trails in the Corn Dance Unit. After the May 28, 2013 Closure Order, approximately 48 miles of secondary trails remain open to ORV use in the Turner River Unit, and approximately 37 miles of secondary trails remain open to ORV use in the Corn Dance

---

[1] The Supplemental Complaint for Declaratory and Injunctive Relief (Doc. 22) contains a detailed recitation of the various federal acts and executive orders that Plaintiffs assert apply in this action. The Plaintiffs also included a factual history of the establishment of the Big Cypress Preserve, the prior 2000 ORV Management Plan, and information as to the 2007 Bear Island lawsuit. The Court will focus on the allegations pertinent to the Motion to Dismiss or Alternatively Motion to Stay Plaintiffs' Claims (Doc. 28).

Unit. (Doc. 22, ¶2). The Plaintiffs assert that prior to promulgating the August 5, 2010 and July 22, 2011 Closure Orders which allowed 147 miles of secondary ORV trails, NPS failed to conduct an agency review which violated federal environmental statutes and executive orders, and NPS failed to consult with U.S. Fish and Wildlife Serve ("**FWS**") concerning the effects of these trails on the protected wildlife (Doc. 22, ¶3). The May 28, 2013 Closure Order did close some miles of secondary trails, but continued to allow approximately 85 miles of the secondary trails to remain open to ORV use in the Turner River and Corn Dance Units. (Doc. 22, ¶3). NPS's Closure Order of May 28, 2013, closed the Preserve to all ORV use from June 3, 2013 to August 2, 2013 which was normally done annually, but also included the following:

> (1) it stated that secondary trail destinations to "higher, drier lands" in the Preserve for recreational use "continue to be suitable for" ORV use;
> (2) it closed secondary trails in the Turner River and Corn Dance Units that "had loops or branches trailing off";
> (3) it closed secondary trails in the Turner River and Corn Dance Units that "did not reach their intended destinations within two miles," which the agency asserted was a limit "intended, pending further environmental review, to strike a reasonable balance between continued opportunities for visitors to access destinations within these units and ensuring that the trail system is consistent with the ORV Plan's provision that secondary trails will be relatively short in distance"; and
> (4) it suggested that the secondary trail network in these Units might be subject to future NEPA review and possible ESA consultation with the FWS, to which the public will have an opportunity to submit comments.

(Doc. 22, ¶67). This Closure Order closed 34.71 miles of secondary trails in the Turner River Unit, and 27.54 miles of secondary trails in the Corn Dance Unit. (Doc. 22, ¶68). Approximately 48 miles of secondary trails remain open to ORV use in the Turner River Unit, and approximately 37 miles of secondary trails remain open to ORV use in the Corn Dance Unit. (Doc. 22, ¶68). The Plaintiffs assert that the remaining open trails are destructive. (Doc. ¶71).

In Count One, the Plaintiffs allege that NPS's failure to prepare an environmental impact statement ("**EIS**"), a supplemental environmental impact statement ("**SEIS**"), or an Environment

Assessment ("**EA**") prior to authorizing these secondary trails violated the ORV Plan for the Preserve, and failing to issue a finding of no significant impact ("**FONSI**") violates the National Environmental Policy Act ("**NEPA**"), the Council on Environmental Quality ("**CEQ**") regulations, and the Administrative Procedure Act ("**APA**"). (Doc. 22, ¶73-75).

In Count Two, the Plaintiff alleges that NPS's response in its May 28, 2013 Closure Order to Plaintiff's notice letter and lawsuit that it might undertake some NEPA review in the future by analyzing the environmental impacts of the secondary ORV trail network in the Turner River and Corn Dance Units does not address the resource damage that is occurring by allowing the secondary ORV trails at issue to remain open while the possible reviews are being completed. (Doc. 22, ¶77-78).  The open ORV secondary trails at issue may become beyond repair if they remain open.   (Doc. 22, ¶78).

In Count Three, the Plaintiffs assert that NPS's authorization to expand the secondary ORV trails in the Turner River and Corn Dance Units causes irreversible impact to the soils, hydrology, and wildlife of the Preserve as well as impacting the non-motorized vehicle use of the Preserve. (Doc. 22, ¶80).  Therefore, the Plaintiffs argue that NPS's actions violated the Big Cypress Establishment Act and the Organic Act.   (Doc. 22, ¶80).   The Plaintiffs claim that pursuant to the Organic Act, NPS was required to prepare an impairment determination which analyzes any impairment to the resources of the Preserve before authorizing the expansion of the secondary ORV trails at issue. (Doc. 22, ¶80). However, even though an impairment study after the secondary ORV trails have been opened cannot cure any prior violations, the Plaintiffs argue that NPS was arbitrary and capricious in its actions in expanding secondary ORV trails in violation of the APA. (Doc. 22, ¶80).  The Plaintiffs argue that NPS failed to properly designate secondary trails by failing to verify "(1) it has, as an endpoint, private property or a designated campground, and is,

therefore, not a loop; (2) the trail will only be used for ingress and egress by the property owner, if designated for private property access, and not for public recreational use; (3) the trail must branch off of a primary trail, and not another secondary trail; (4) the trail itself is short; and (5) the cumulative mileage of secondary trails in a given management unit must be a fraction of the authorized primary trail mileage so as not to exceed the ORV Plan's authority" which violated the existing ORV Plan. (Doc. 22, ¶84).  The May 28, 2013 Closure Order did rectify some of the problems but failed to address the impermissible secondary trail destinations, recreational use on landowner access trails, trails that are individually long, and the extensive cumulative footprint of the secondary trail network in violation of the APA. (Doc. 22, ¶84).

In Count Four, the Plaintiff contends that NPS failed to consider and apply the minimization criteria for each of the secondary trails designated in the Turner River and Corn Dance Units as is required by the ORV Executive Order 11,644. (Doc. 22, ¶91), and in violation of the APA.

In Count Five, the Plaintiff argues that by expanding the secondary ORV trails in the Turner River and Corn Dance Units, NPS endangered the federally protected wildlife of the Preserve. (Doc. 22, ¶92).   The Plaintiffs claim that NPS was required to consult with FWS before expanding the secondary trails in Turner River and Corn Dance Units.   (Doc. 22, ¶92). By failing to consult with FWS, NPS violated the Endangered Species Act ("**ESA**") and the APA.

### II.     Standard of Review for Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at

any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). The burden of establishing the existence of federal subject matter jurisdiction is with the party that brings the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

Attacks on subject matter jurisdiction under Fed. R. Civ .P. 12(b)(1) come in two forms: (1) facial attacks, and (2) factual attacks. *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n.5 (11th Cir. 2003). A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Lawrence v Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Whereas a facial attack challenges the complaint on its face and "requires the court merely ... look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." *Stalky v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232–33 (11th Cir.2008). In a facial attack, the Court accepts as true all of the allegations of the complaint and construes them in a light most favorable to the plaintiff. *Sea Vessel Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994). However, when the jurisdictional issue is factual, as it is in the instant case, then the Court may consider matters outside the four corners of the complaint to determine if jurisdiction is proper. *Delgado v. Collecto, Inc.*, 2013 WL 6332748, *1 (M.D. Fla. Dec. 5, 2013). Further, in a factual attack of jurisdiction, there is no presumption of truthfulness of the allegations of the complaint. *Id*.

### III.    Issue of Prudentially Moot

The Defendants assert that Claims One, Three, Four and Five should be dismissed as being prudentially moot, arguing that circumstances have changed since the 2010 and 2011 Closure

Orders were entered and since the initiation of this lawsuit which include the following changes: NPS voluntarily committing to reconsider the issue of secondary trails in an EIS; closing 43% of the secondary trails that were previously opened in the Turner River and Corn Dance Units pending the completion of the NEPA analysis; publically committing to not designating any additional secondary trails in the Preserve until the NEPA analysis is complete; and publically committing itself to initiate ESA consultation with FWS. (Doc. 28, p. 15).  The Plaintiffs argue that the Defendants have failed to demonstrate that Claims One, Three, Four and Five are prudentially moot, because NPS has voluntarily committed to go through a NEPA process for an indefinite period of time, however, NPS was not required to go through this process and could stop this process at any time.   In addition, there are 85 miles of secondary trails that remain open while this process is being completed, and the Plaintiffs assert that further damage and destruction will occur the Big Cypress Preserve while the review process is continuing.

Article III of the United States Constitution limits jurisdiction of federal courts to "Cases and Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "A plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing." *Koziara v. City of Casselberry,* 392 F.3d 1302, 1304 (11th Cir. 2004) (*citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).  To invoke a federal court's jurisdiction, a plaintiff must show that "(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000).

The elements amount to "an 'irreducible constitutional minimum' and failure to show any one results in failure to show standing." *Id*. (citing *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136.)

If a lawsuit is moot, then it cannot fulfill the requirements of an Article III case or controversy, and federal courts lack subject matter jurisdiction to consider the case. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). Mootness can occur due to a change in circumstances or a change in law. *Id.* A case is moot when the court is unable to provide any meaningful relief. *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002). If a case becomes moot under Article III, then a court no longer has subject matter jurisdiction over the action. *Sierra Club v. U.S. Army Corps of Engineers*, 277 Fed. App'x. 170, 172 (3d Cir. 2008). "Under the prudential mootness doctrine, however, we may decline to exercise our discretion to grant declaratory and injunctive relief if the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Id*. (citing C*hamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)) (additional citations omitted), See also *Ingaseosas Intern. Co. v. Aconcagua Investing Ltd*, 479 Fed. App'x. 955, 962 (11th Cir. July 5, 2012)[2]. The central question relating to the issue of prudential mootness is whether factual or legal changes since the inception of the lawsuit have made the court unable to provide any meaningful relief. *Id*. at 172-173. A plaintiff must show more than a personal stake in the outcome of the case, and must also show that an "'immediate irreparable injury, and the inadequacy of remedies at law.'" *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499, 501 (1974)).

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

The Court determines in the instant case that the claims should not dismissed based on the doctrine of prudential mootness.  NPS asserts that the secondary trail system in the two Units at issue is not a substantial change to the ORV Management Plan and that no supplemental NEPA analysis or additional ESA consultation is warranted.  However, even though a supplemental NEPA analysis or additional ESA consultation are not required, NPS has "voluntarily" agreed to complete this environmental analysis and to initiate a consultation with FWS in part to comply with the Court's decision in *Defenders of Wildlife v. Salazar*, 877 F.Supp. 2d 1271 (M.D. Fla. July 10, 2012).   NPS claims that it has moved forward with the process for preparing an EIS, and therefore the central issue before the Court that the 2013 Closure Order is a substantial change to the ORV Management Plan and whether reinitiation of consultation is warranted is prudentially moot.

NPS repeatedly stated in its filings that it is "voluntarily" agreeing to complete an environmental analysis and to initiate consultation with FWS, but does not agree that the additional secondary trails in the Turner River and Corn Dance Units are a substantial change to the ORV Management Plan. However, NPS has failed to show that NEPA or an additional ESA consultation will be completed because NPS is voluntarily initiating these tasks and is not bound to complete them.  NPS has not and cannot show that it is precluded from withdrawing its voluntary compliance should the Court dismiss this action.

Further, NPS has failed to show that it will not request additional delays in completing the environmental analysis or consultation, and even if NPS stays on track, NPS estimates that a draft of the EIS relating to the secondary trails will be released for public review in the summer of 2015, and a final EIS is expected to be released in the winter-spring of 2015-2016 while the

approximately 85 miles of secondary ORV trails remain open.  Again, nothing would preclude NPS from further delaying these dates.

NPS asserts that it has closed 43% of the secondary trails in the Turner River and Corn Dance Units and asserts that it will not designate any additional secondary trails until the NEPA is complete.   However, the remaining secondary trails continue to be open and NPS has failed to counter the argument that these trails will not damage or destroy the ecosystem in the Preserve. Specifically 48 miles of secondary trails remain open in the Turner River Unit and 37 miles of secondary trails remain open in the Corn Dance Unit. The Plaintiffs have made a showing that the continued use of the open secondary ORV trails in Turner River and Corn Dance Units have an impact on the environment and the natural resources of the Preserve. The Court recognizes that the showing by the Plaintiffs was not made by scientists but rather by observations of a naturalist who uses the Preserve for hiking.  NPS asserts that it will take until the winter-spring of 2015-2016 to complete an environmental study of the impact of the secondary ORV trails in the Turner River and Corn Dance Units.   The Court cannot expect the Plaintiffs to complete a scientific study in the response time to the Partial Motion to Dismiss or alternatively Motion to Stay Plaintiffs' Claims, and the affidavit and photographs are sufficient to make a showing that by keeping the approximately 85 miles of secondary trails open to ORV use, this use will impact the Preserve.

NPS continues to permit 85 miles of secondary ORV trails to remain open during the NEPA and consultative process and appears to intend to keep these secondary trails open, absent judicial intervention. The amount of miles of secondary trails that remain open is not insignificant enough to find that the Claims are prudentially moot.  *See, Sierra Club v. U.S. Army Corps of Engineers*, 277 Fed. App'x. 170, 173 (3d Cir. May 14, 2008) (Court found claims prudentially moot where remaining wetlands of a .09 acre parcel and a .03 acre parcel were small, separated and border a

major thoroughfare and would not provide meaningful relief to plaintiffs' alleged recreational and aesthetic injuries). Possibly, had NPS closed these 85 miles of trails, the Court may have considered the issues raised in Claims One, Three, Four and Five to be prudentially moot, however, by keeping these additional trails open, the Court determines that these Claims are not prudentially moot.

The Court also carefully reviewed the Opinion and Order of the Honorable John E. Steele in *Defenders of Wildlife v. Salzar*, 877 F.Supp. 2d 1271, 1286-87 (July 10, 2012) relating to the issue of reopening certain ORV trails in the Bear Island Unit at Big Cypress. Judge Steele thoroughly reviewed the history of the Big Cypress Preserve and many of the statutes and regulations involved in the instant case as well. In the Bear Island case, Judge Steele determined that the NPS was required to perform a supplemental environmental analysis prior to reopening certain ORV trails in the Bear Island Unit in 2007. *Id. at 1300-1301*. As a remedy, Judge Steele determined that NPS's decision to re-open the trails which included converting 1.58 miles of primary trials to secondary trial, re-opening 15.21 miles of primary trial, and 7.49 miles of secondary trial was arbitrary and capricious and set aside this decision. In addition, Judge Steele closed the portions of the trials that were at issue.

In the instant case, the Court understands NPS' argument that because NPS has voluntarily agreed to complete an environmental analysis and to initiate a consultation with FWS, that the Plaintiffs claims that it violated NEPA, the Big Cypress Establishment Act, Executive Orders 11644 and 11989, and the Endangered Species Act are now prudentially moot by NPS subsequent actions, however, by keeping the 85 miles of secondary trails open, the Plaintiff continue to have claims that are not prudentially moot. If NPS had closed the secondary trails at issue that remain open, then the Claims One, Three, Four and Five would have been more likely to be prudentially

moot. However, while these secondary trails remain open, this Court can fashion meaningful relief which is similar to the relief afforded in the *Defenders of Wildlife v. Salzar*, 877 F.Supp. 2d 1271 (July 10, 2012) case which would be to close the secondary trails at issue until the environmental analysis and consultation with FWS is completed. Therefore, the Court determines that Claims One, Three, Four, and Five are not prudentially moot.

### IV. Stay of Action

Alternatively, the Defendants request that the Court stay all Claims in this action pending completion of the EIS and consultation with FWS under the jurisdiction of primary jurisdiction. The Plaintiffs assert that the Defendants have not met their burden to stay this action. "Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n. 3(11th Cir. 2001) (quotations and citations omitted). The purpose of this doctrine is to allow an administrative agency to attempt to resolve the pending issues that are within the purview of that agency. *Id*. A further purpose is to avoid judicial interference and for the court to defer to the expertise of the agency in uniformly interpreting a statute or regulation. *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000). Primary jurisdiction is a judicially-created doctrine and the decision whether to defer to an agency is within a court's sound discretion. *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.*, 423 F.Supp. 559 (S.D. Fla. 1976) (citing *United States v. Western Pac. R. Co.,* 352 U.S. 59 (1956)).

In the instant case, the Court recognizes that the administrative agencies have an expertise in the impact of the secondary ORV trails on the wildlife and habitat in the Turner River and Corn Dance Units. Again, if NPS had closed the 85 miles of secondary trails at issue, then the Court

would be more likely adopt the arguments that the issues raised in Claims One, Three, Four, and Five are prudentially moot or stay the action pursuant to primary jurisdiction. However, even in NPS's best estimate, the administrative process could last until the winter or spring of 2015-2016 and during that time, these secondary trails will be used and may impact the environment of Big Cypress Preserve. For the same reasons the Court will not dismiss the Claims in this case pursuant to the prudentially moot doctrine, the Court does not find that a stay of this action under the primary jurisdiction doctrine is appropriate mainly because 85 miles of secondary trails remain open during the administrative process.

**IT IS RESPECTFULLY RECOMMEDED:**

The Partial Motion to Dismiss or Alternatively Motion to Stay Plaintiffs' Claims (Doc. 28) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida on January 9, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties